*Chittenden,*
*January,*
*1797.*

CAMPBELL *vs.* HYDE.

The condition of a bond, that H shall within five months from date, establish B. in possession of the land described, will admit of different constructions, and may be explained by parol proof.

Evidence of a performance of the condition, will not support a plea of accord and satisfaction.

Great latitude is, in many cases allowed, in the admission of evidence, under the general issue; but in cases of special pleading, the parties are strictly confined to the facts put in issue.—Therefore, if plaintiff traverse a plea in bar, he cannot give in evidence, matter in avoidance of the plea, and can avail himself of such matter, by a replication only.

THIS was an action of debt on a bond with the following condition :—" Whereas the said Hyde has sold and conveyed to the said Campbell, the Right of D. Hoyt, in the two Heroes, if the said Hyde, shall within five months from date, put and establish the said Campbell, in possession of said Right, the said bond to be void, &c."

The defendant pleaded in bar, that after making the said writing obligatory, to wit, on ———, it was agreed, by and between the said Campbell and the said Hyde, that A. Gordon, collector of a certain proprietors' tax, having sold said Right to said Hyde, at publick vendue, and not having made any deed thereof to said Hyde, he, the said Hyde, should draw an order on the said Gordon, to make a deed of the same Right, to the said Campbell, and if the said Gordon should make a deed thereof, accordingly, the said Campbell should accept it, in full satisfaction of said bond and condition—that said Hyde, accordingly drew an order on said Gordon, who executed and delivered to said Campbell a deed of said Right, which he accepted in full satisfaction of said bond, which plea was traversed by the plaintiff.

On a trial by Jury, the defendant to prove said issue on his part, produced the following evidence :

E. Allen, proprietor's clerk of the two Heroes, testified, that sometime after the date of said bond, Campbell came to his house, and inquired whether Hyde had bid off the Right of D. Hoyt in the two Heroes—that he informed Campbell that he had. Campbell then said that he had bought the Right of Hyde, and had agreed to take a deed of Gordon, the collector, that Hyde was poor, but Gor-

9

*Chittenden,*
January,
1797.

Campbell
*vs.*
Hyde.

don had bottom. Campbell afterwards told the witness, that he had taken a deed of Gordon.

Smith testified, that Campbell told him, he had taken a deed of the same from Gordon.—The witness told Campbell that it was a collector's deed, and if the title should fail, perhaps he would recover of Gordon no more than the consideration of the deed, which was a small sum.—Campbell replied, if that be the case, I will keep my bond against Hyde; if I am not safe one way, I will be another.

Gordon testified, that after he had sold the Right of D. Hoyt to Hyde, at vendue, which he did as proprietor's collector, and after the time of redemption had expired, Campbell brought him an order from Hyde, to convey the Right to ·him, Campbell.—That he executed and delivered the deed accordingly.—That he never saw the bond, but at the time he gave the deed.—There was some conversation about the bond—he understood that Campbell was to give up the bond.—Hyde afterwards called on him, and inquired if Campbell had left the bond to be given up—he informed him that he had not.

J. Hyde, jr. testified that he had a knowledge of the bargain between his father and Campbell.—That in the year 1793, he had been to survey a piece of land for Campbell.—That on his return, Campbell set him across a bay of the Lake in a canoe—while on the water, he had a conversation with Campbell respecting the bond.—Campbell said the business was settled as it respected his father, and the bond ought to be given up; but that he still held it, as he supposed it might be of some use to him in a dispute between him and Gordon, for which reason he kept it.

The plaintiff's counsel then stated, that it was agreed between Campbell and Hyde, on the purchase in question, that said Right should be conveyed by what is called a transfer.—That Gordon, the collector, should, by virtue of an order for that purpose, give a deed to Campbell, instead of Hyde, the original bidder.—That the order was drawn, and at the same time the bond was executed, for the purpose of securing to Campbell a good title in that mode of conveyance, so that the order was not given in satisfaction of the bond, but the bond was given for the purpose of securing the event of the order on Gordon, and the title to be thence derived. This they contended the words of the condition would warrant :—" After

said Hyde shall put & establish the said Campbell in possession,"&c.

On this point, Lathrop testified that he was a witness to the bond—that he thought the order for a transfer, was drawn at the same time with the bond—thought that something was said concerning the propriety of doing the business in that way; but of this he could not be positive.

*Chitenden,*
*January,*
*1797.*

*Campbell*
*vs.*
*Hyde.*

Lloyd testified that he was, with others, on an arbitration between Campbell and Hyde—that Campbell brought forward the bond, to be arbitrated with other matters—that Hyde objected, and said the title to the Right had never been disputed.

Pearl testified, that after the action of ejectment against Campbell, for the Right of D. Hoyt had been tried, or was on trial, he heard Hyde tell Campbell that his title to the right was good—that if it was not, he would make it good. This he said was in consequence of its being suggested, that Hyde had received the redemption money of the original owner, by which the sale had been vacated before the deed was given to Campbell.

Comstock testified, that after a recovery had against Campbell, of the Right of D. Hoyt, he, on request of Campbell, conversed with Hyde concerning a settlement. Hyde said that Campbell had not used him well in that business, and that he ought not to make him any compensation, but that he would, if witness would take some land in Hyde Park for that purpose.

Campbell, the father, testified that he called on Hyde for his son—told him that the title to the Hoyt Right was not good. Hyde said he would call on his son, and make out a chain, as witness understood it, by taking a deed from Gordon to himself, and then executing a deed to his son.

The counsel for plaintiff then stated, that the defendant before he gave the order on Gordon, had received the redemption for his bid on the Hoyt Right, and given his receipt for the same, while it was, by law, redeemable, by which the deed from Gordon had been defeated; consequently, the whole defence now set up was fraudulent and ought not to avail the defendant, and on this point offered to produce evidence.

*House,* for defendant, objected that this was not a point in issue.

*By the Court.* The issue in this case is taken on the facts stated

*Chittenden,* in the defendant's plea in bar. In replying to a plea in bar, the
January, plaintiff may traverse the facts, on which the defendant relies, or, he
1797. may confess the facts, and avoid them by new matter. We have no
Campbell doubt, that if the plaintiff had replied the matter now sta-
*vs* ted, it would, in point of law, have been a good avoidance of the
Hyde. matter alleged in bar. In many cases, greater latitude is allowed,
on the general issue; but when parties go into special pleadings,
the rule is universal, that they shall be confined strictly to the facts
put in issue. The fact now offered to be proved, is not within the
issue, and ought not to be admitted.

The cause was argued to the Jury by *House* and *Keyes* for de-
fendant, and *D. Chipman* and *Harrington* for plaintiff.

CHIPMAN, Ch. J., after stating the pleadings and evidence to the
Jury, gave the following charge:—The only point for you to deter-
mine, is, whether the order on Gordon, and the deed from Gordon
to Campbell, were, by agreement between the plaintiff and defend-
ant, given and received in satisfaction of the bond, or, in other words,
whether the plaintiff agreed to accept of that deed, in lieu of, and as
equivalent to, being put and established in possession of the Right
as therein stipulated. We have it in evidence, that the defendant,
having purchased the Right of land of Gordon, a collector, and hav-
ing taken no deed of the same, drew an order on Gordon, to convey
the Right to the plaintiff. The plaintiff took the order and obtained
the deed accordingly. But the words of the agreement, on which
the order was given, and the precise time when the agreement was
made, whether at the time when the bond was executed, or at a sub-
sequent time, does not appear in proof. The substance and intent
of the agreement, are to be collected from the subsequent conversa-
tion of the parties and the acknowledgements of the plaintiff at dif-
ferent times. The evidence, though not contradictory in terms, yet
tends to different conclusions. It is your province to weigh the ev-
idence, and thence to ascertain the intention of the parties in this
transaction. It has been well observed in the argument, that could
we learn the true meaning of the parties, from their expressions, in
the condition of the bond, it would enable us, to weigh and apply
the evidence with a great degree of certainty. The operative words
in the condition of the bond, are, "Whereas the said Hyde has sold

and conveyed to the said Campbell, the original Right of D. Hoyt,
in the two Heroes, if the said Hyde, shall within five months from date, put and establish the said Campbell in possession of said Right, then this obligation to be void." This condition, with or without
reference to the order on Gordon, may receive different construc- tions. 1st. It may be considered as intended to bind the defendant, to make out a good title in possession, within the time stipulated, and the order as given on an after agreement. In this view of the transaction, the case will turn wholly on the weight of the evidence to prove the subsequent agreement. The weight of the evidence here seems to be with the defendant; but of this, you are the sole judges. 2d. The order and agreement, that a deed should be re- ceived from Gordon, may be considered as the conveyance mention- ed in the condition of the bond, (for it is clear that no conveyance was made out at that time) and the bond as intended to secure the execution of such a deed and its final validity, in operation.

If this be the true intention and explanation of the whole transac- tion, the defendant has mistaken his defence. He should have pleaded performance, instead of his present plea, which is in the nature of accord with satisfaction, and directed his proof to that point. But this construction seems to be wholly opposed, by the stipulation in the condition, that the defendant should fulfil, within five months from the date of the bond. As the defendant was bound to discharge himself, by fulfilling, on his part, within five months, it could not have been in the contemplation of the parties, that the bond should stand as a security for the validity of the conveyance, when made in the way proposed; for this point might not be deter- mined for years, certainly not within five months: but that if such conveyance should fail in securing the title, it was, doubtless, to be left to the common remedy. This seems to have been the under- standing of the plaintiff, in his conversation with the witnesses, Al- len and Smith. He represented to them, that it would be more safe for him to take a conveyance from Gordon, than from the defend- ant, because Gordon, as he said, had bottom, that is, he would be able to make good the damages, in case the title should fail, which the defendant might not be able to do; from which it appears, that the plaintiff's sole reliance on the bond, was, to secure to himself a deed or conveyance of the Right in possession, and expected to take his remedy on the instrument of conveyance, if the title should final-

Chittenden,
January,
1797.

Campbell
vs.
Hyde.

ly fail.    3d. If we take it that the parties, in drawing the bond, did not distinguish clearly, (as is very evident) between a deed of conveyance, and an agreement for a sale, and that the bond was intended only to secure, that Gordon should give a deed of the premises, to the plaintiff.    The substance of this issue is with the defendant. The validity of the deed in its operation, and the remedy upon it, on failure, are out of the present question.

If, on the whole, you should be of opinion that the order was given, on an after agreement, in lieu of what was stipulated in the condition of the bond, or, if you should be of opinion that the bond was only intended to secure that Gordon should give a deed of the premises, you will find for the defendant, on his plea in bar.

But, if on the other hand, from an attentive consideration of the bond, condition, and the whole transaction, as it appears in evidence, you should be of opinion that the bond was intended to secure the execution of the deed from Gordon, and also, its final validity, you will find for the plaintiff.

The Jury found a verdict, that the plaintiff ought to be barred.

The plaintiff's counsel, after verdict, moved for a rule on the defendant, to shew cause why a new trial should not be granted.

The ground suggested for granting a new trial, was, "that J. Hyde, jr. who testified in the cause, was a material witness for the defendant, and without whose testimony, the Jury would not have found a verdict for the defendant, ought to have no credit.—That since the trial, the plaintiff had discovered new evidence, by which he should be able to prove, that the plaintiff was not with the witness, at the time when he testified the conversation between them took place."

Marsh opposed granting the rule.    D. Chipman and Harrington were heard in support of it.

CHIPMAN, Ch. J.    The Court are unanimously of opinion, that the ground stated in the motion, does not come within any of the reasons for which new trials have been granted.    It is said that J. Hyde, jr. was a material witness for the plaintiff, and without whose testimony, the Jury would not have found a verdict for the defend-

ant, and that no credit ought to have been given to his testimony.— *Chittenden,* That since the trial, the plaintiff had discovered new evidence, by $\quad$ *January,* 1797. which he should be able to prove an *alibi* of the witness, that the plaintiff was not with the witness at the time when the witness Campbell stated the conversation to have taken place. This, give it its full $\quad$ *vs.* Hyde. weight, goes only to discredit the witness, and that in a matter merely circumstantial. It may have had some weight as a collateral circumstance, in granting a new trial, but has never been considered, by itself, as a sufficient ground for granting a new trial. I find it is agreed, that the witness did survey for the plaintiff, at the time mentioned in his testimony, and that on his return home, he was by some one conveyed in a canoe. But, it is said it can be proved, that the plaintiff was not with the witness in the canoe at that time. It is more than three years, since this conversation, related by the witness, is said to have taken place. If the witness has mistook, or misremembered in that particular, at this distance of time, it would not go to contradict his testimony. It would be a circumstance, only, for the consideration of the Jury, in weighing his testimony. The Jury might have wholly disbelieved his testimony, on proof of that mistake, or, they might have thought that the conversation was had, as related in substance, though different a few minutes or a few rods in point of time or place. Besides, it cannot be conceived that the verdict turned on the testimony of this witness. The three witnesses who preceded, and whose veracity has not been questioned, testified to a conversation of the plaintiff, and to facts which must have had much more weight with the Jury.

Under all the circumstances, we are clear, that a new trial ought not to be granted.