# MERRIMACK,

## JANUARY TERM, A. D. 1858.

CRAFTS *v.* THE UNION MUTUAL FIRE INSURANCE COMPANY.

A new trial will not be granted on the ground of newly discovered evidence, unless it be made to appear probable that injustice has been done by the verdict, and that the newly discovered evidence is of such controlling character that it will probably correct the injustice upon the new trial; nor unless it goes directly to the merits of the controvery, and not merely to contradict or impeach a witness; nor if it applies to a point directly drawn in question by the suit, but which was so far abandoned at the trial, and in the preparation for it, by the losing party, that all inquiry for evidence upon that point was waived by him.

A verdict will be set aside on the ground of misconduct of the party, if, by his procurement or connivance, one who had knowledge of facts material to contradict one of the witnesses, is hired to keep out of the way, so that he may not be summoned by the other party.

The vendee of property insured by a policy issued to the vendor, and assigned by him to the vendee, may maintain an action upon the policy for a loss, although the sale may appear to have been made with the intent to defeat the creditors of the vendor.

ASSUMPSIT, in the Court of Common Pleas, upon a policy of insurance against fire, originally issued to Martin Crafts, and by him assigned to the plaintiff. A verdict was returned for the plaintiff, to which the defendants excepted, on the ground of alleged erroneous rulings and instructions of the court. The exceptions were transferred to this court; but prior to any decision upon the exceptions, the defendants moved in the Common

Pleas for a new trial, on the ground of newly discovered evidence, and the motion was transferred to this court. The nature of the newly discovered evidence, and the application to the points of the case, sufficiently appear from the statements contained in the opinion of the court.

The defendants also moved that the verdict be set aside on the ground of the misconduct of the plaintiff, in procuring a material witness to be hired to keep out of the way, so that he could not be summoned by the defendants, and a discovery of the fact by the plaintiff since the trial.

*George & Foster*, for the defendants, cited *State* v. *Carr*, 21 N. H. 173, and argued that from the affidavits of Mr. Fowler and Mr. Foster, the former a director of the defendant company, and both of them employed as counsel for the corporation, in the cause, it appeared that the facts disclosed by the newly discovered evidence were unknown to them, and to all the officers of the corporation at the trial. They contended that the newly discovered evidence tended to show fraud in the plaintiff, and fraud and perjury in his principal witness; that no suspicion of the commission of such heinous offences could have been entertained by the defendants, and consequently there was no reason for their making inquiry in that direction; and that most of the facts disclosed existed only in the knowledge of the plaintiff and his principal witness, Martin Crafts, and of Boone, Pearsons and Swain; and no amount of investigation could have developed them, except by the examination of these persons as witnesses. They further contended, that, as the facts were not matters of record or of public knowledge, but individual secrets, involving undiscovered and unsuspected crime, the corporation could be charged with no neglect in not sooner discovering them. They contended that it was immaterial that the facts testified to by the defendants' witnesses, constituting the newly discovered evidence, are denied by the other side; because, upon the credibility of the witnesses and the correctness of their statements, the jury must decide.

They further argued, that it was not competent for the plaintiff and Martin Crafts to set up their fraud for the purpose of invalidating the bill of sale from Martin to the plaintiff, which, if valid, shows conclusively that all the property was transferred to the plaintiff, and consequently a double insurance subsisted. They also argued that, if a new trial was not granted on the ground of newly discovered evidence, the verdict should be set aside on the ground of the misconduct of Martin Crafts, who, as the agent of the plaintiff, and under circumstances sufficient to show that it was with his connivance, hired Pearsons to keep out of the way, that he might not be summoned as a witness by the other party.

*H. A. Bellows*, for the plaintiff, contended that, as the defendants had a right to review the action, a new trial should not be granted on the ground of newly discovered evidence, however strong and conclusive in its character it might be.

He also contended, that there was a want of proper diligence on the part of the defendants in making inquiry for evidence on the points to which the newly discovered evidence applied; that none of those points, except the want of a sufficient transfer of the policy and statement of loss, were taken at the trial; and that the defendants, relying upon these, and having no suspicion that evidence existed favorable to them on the others, — to wit, misrepresentation and concealment in the application for insurance and statement of loss, as to the title and the incumbrances, and as to the double insurance, and falsehood and fraud in the statement of loss, as to the value of the property, — forebore all inquiries in regard to those points; that these were matters directly put in issue by the suit, and that the defendants, relying upon the sufficiency of their defence on the other points, and having neglected all inquiry into these, were not now to be permitted to try their fortunes upon them, after having waived them and taken their chance of a successful result upon the others; and on this point he cited *State* v. *Carr, qua sup.*; *Stearns* v.

*Allen,* 18 Vt. 119; *Wiggin* v. *Coffin,* 3 Story 1; *Morgan* v. *Houston,* 25 Vt. 570, and *Mann* v. *Worrall,* 16 Barbour 221.

He also contended, that the newly discovered evidence as to the transfer of the policy is merely cumulative, and that the testimony of Pearsons is only of a character to impeach the plaintiff's witness, by showing statements of his inconsistent with his testimony.

SAWYER, J. Upon the trial of this cause the positions taken in the defence were, first, that the assignment of the policy by Martin Crafts to the plaintiff was not completed, so as to render the defendants liable to the plaintiff at the time of the loss; and, second, that if the policy had been assigned, so as to entitle the plaintiff to maintain the action on that ground, nevertheless the defendants were not liable, by reason of the want of proper notice and statement of the loss.

The ground upon which the first point of the defence rested was, that no such additional security was furnished to the company for the payment of future assessments, as they were authorized by the by-laws to require and did require, to render the assignment valid. This ground of defence was met by the plaintiff by proof that such security was furnished to Martin Crafts for the benefit of the company, agreeably to an understanding between him and the officers of the company at the time when he notified them of the assignment, by which he, as the agent of that company, for that purpose, was to receive the plaintiff's note for them, and to forward it to them at his convenience; the original premium note in the meantime to stand as security for the future assessments.

Whether such understanding did or did not exist, was one of the principal matters of fact in controversy on this part of the defence; but it is obvious that another material inquiry involved in it was, whether in fact the additional security was furnished to Martin Crafts for the use of the company within a reasonable time prior to the loss. It is claimed by the defendants that some

of the newly discovered evidence has a direct bearing upon this latter question.

Upon the other point of the defence, viz., that no proper notice and statement of the loss was given to the defendants, two questions are involved in it: first, whether any statement was in fact furnished within thirty days after the loss, as required by the by-laws; and, second, whether the statement, if furnished, was such as required by the act of incorporation and by-laws. The first of these questions was controverted at the trial, and found by the jury for the plaintiff; and it is not understood that any portion of the new evidence applies to this question.

The other question on this point of the defence, under the provisions of the act of incorporation and by-laws, may depend upon a variety of particulars, declared therein to be necessary in making the statement of the loss. Thus, section 8 of the act requires notice of the loss to be given in writing, under oath, to the directors, or some one of them, or to the secretary, within thirty days after the loss; and article 14 of the by-laws requires the insured, within thirty days after the loss, to deliver to the secretary a particular account, on oath, of the property lost, and of its value at the time of the loss; and requires that the statement shall set forth whether the insured was sole owner; whether the property at the time of the loss was, or since has been, incumbered by mortgage or otherwise; whether any subsequent insurance has been effected on the property; and what was the cause of the fire, and what the value of the property remaining; and further provides, that in case there shall appear to be any fraud in the claim, or false swearing in support of it, the insured shall forfeit all benefit under the policy. The provisions of the charter and by-laws are referred to in the policy, and made, by its express terms, conditions and limitations of the contract; and the defendants claim that the newly discovered evidence shows that the statement furnished was not in conformity with these provisions, in the following particulars, viz.: in falsely alleging, first, that the plaintiff was sole owner of the property insured; second, that the amount of incumbrance upon it was but $800;

third, that there was no subsequent insurance ; and, fourth, that the value of the clay destroyed was $200, of wood, $300, and unburnt ware, $500.

The application on which the policy was issued sets forth that the property was incumbered to the amount of $800 ; and it is contended by the defendants that the newly discovered evidence furnishes ground of defence not taken at the trial ; that in this there was a material misrepresentation, which vitiates the policy.

A motion is also made to set aside the verdict, and grant a new trial, on the ground of the misconduct of Martin Crafts in procuring the absence of a material witness for the defence, so as to prevent his being summoned, and thus depriving the defendants of the benefit of his testimony.

It becomes necessary to examine the evidence presented in support of the motion upon each of these several grounds. And, first, as to the question whether the additional security was furnished to Martin Crafts for the company prior to the loss. The alleged newly discovered evidence upon this point consists in the testimony of William A. Pearsons and Benjamin R. Boone, to the effect that Martin Crafts substantially admitted to them that he had not received from the plaintiff the required security for future assessments, at the time of the loss ; and the testimony of Samuel Lesure, post-master at Whately, and of A. P. Hughes, post-master at Nashua, to the effect that no such letters passed between the post-offices at those places, as, according to the testimony of Martin, were forwarded, inclosing the note by him to the plaintiff, on or about the 15th of June, 1851, and by the plaintiff in reply, about the last of that month. This testimony is not direct to the point to be decided on this part of the case by the verdict, but collateral to it. The question at issue, involving the merits of the case on this point, is whether Martin received the note before the fire. He testified that he did, and stated that he received it by letter "from Whately, through the post-office at Nashua." His statements to Pearsons and Boone, that he had not received it, could be used only for the purpose

of impeaching his testimony, and not as direct evidence to negative the queston at issue.   So, too, the statements of Lesure and Hughes, that no letters passed between their respective offices at or about the time specified by Martin, tend only to negative the collateral fact that the note, if received by him in a letter " from Whateley, through the Nashua office," was not received in such letter, mailed at the Whately office for the Nashua; leaving it still to be inferred, consistently with the testimony of Martin, that it may have been received by letter from Whately, forwarded by private conveyance, and dropped into the Nashua office; or by letter, mailed at the Whately office, forwarded to a distributing office, and from thence to the Nashua, or mailed at some other than the Whately office, and forwarded from thence to the Nashua.   Direct proof is presented in the deposition of Josiah Jewett, that in fact a letter, such as Martin testifies he received from the plaintiff, with the note inclosed, was mailed for him from the plaintiff at Northampton, instead of Whately, about the time stated by Martin in his testimony, and with an insurance note inclosed.   Besides, if the testimony of Lesure and Hughes went directly to negative the fact stated by Martin, as to the way in which he received the note, the jury might find that he was under a mistake as to the precise mode in which it came to his hands, without impairing his testimony as to the material fact that he did receive it before the loss.   It is quite probable that the result, with the newly discovered evidence upon this point, laid before the jury, must have been the same as it was without it.

Many authorities sustain the view that the newly discovered evidence, to furnish ground for a new trial, must be of a decisive character; such that it must, in the opinion of the court, have produced a different result.   *Middleton* v. *Adams*, 13 Vt. 285; *Harrington* v. *Bigelow*, 2 Den. 109; *Moore* v. *Bank of Philadelphia*, 5 Serg. & Rawle 41; *Halsey* v. *Watson*, 1 Caines 24; *Kendrick* v. *Delafield*, 2 Caines 67.

Other authorities recognize a less stringent rule, holding the newly discovered evidence to be sufficient, if it renders it proba-

ble that injustice has been done by the verdict, which the evidence may correct.   See authorities on this point cited in *State* v. *Carr*.   It is sufficient for this case that it does not appear probable that the evidence would have controlled the verdict, and produced a different result.

Second, as to the question whether the statement of loss was such as is required by the charter and by-laws.

In reference to the position taken by the defendants, that the statement is insufficient, because it falsely sets forth that the plaintiff was sole owner of the property, and that there was no subsequent insurance, the state of the case, as exhibited by the evidence upon this point, is this :  On the 21st of December, 1850, Martin Crafts made application in writing to the defendants for the insurance.   He was then the owner of several buildings, situate on the east side of Main street, in Nashua, consisting of a dwelling-house and barn, connected by an out-building used for a grocery.   A few feet north of the house was another long and narrow building, consisting of two parts, one story and a half in height ; the entire front part, and the upper half story over the back part, being used for a store-house, and the lower story of the back part for a wood-house.   About thirty feet north of this was another building, consisting of a main body, with an L, one story and a half in height, known as the pottery building, and used as a stone ware manufactory.   This was divided into several compartments — the turning-room, drying-room, kiln-house, and two wood-houses — all connected and constituting together a building of an irregular form, but upon an average about eighty or ninety feet in length, and forty or fifty in width ; and all one story and a half high, with the exception of the wood-house, which was but one story.   In and about this building, and in the cellar under it, were stored articles of manufactured ware, in the different stages of manufacture, and the clay and wood used in manufacturing them.   More or less of the same kinds of articles were also usually stored in the other building, known as the store and wood-house, situate thirty feet south.

In the application to the defendants for insurance, Martin sets forth that he requests insurance on his stock in trade, $300 ; wood, $150 ; fixtures, $100 ; clay, $150 ; kiln, $150 ; buildings, $950 : amounting to $1800.  One of the matters controverted at the trial, and upon which depends the question whether the statement of loss falsely alleges that there was no subsequent insurance, was whether the application, and the defendants' policy which issued upon it, are to be considered as covering the ware, clay, and wood, in both buildings, or only such as were stored in and about the pottery buildings, and not that in the store and wood-house.  Among the questions and answers contained in the application are the following: " What are the dimensions of the buildings to be insured, or that contain the personal property to be insured ?"  Answer :  " 24 x 28 feet, 1½ story ; L is 23 x 23 feet, 1½ story ; kiln-house, 24 x 28 feet, 1½ story ; wood-shed No 1, 23 x 30 feet, 1½ story ; No. 2, 47 x 14 feet, 1 story."  " What the distance and direction from each other, and from other buildings within four rods ? "  Ans.  " South, 30 feet, a stone house ; no other building within four rods."  " How are the buildings occupied ? "  Ans.  " For a pottery, or stone ware manufactory."  " What does the stock in trade consist in ? "  Ans.  " Stone ware, clay, and wood."

It is clear, from the description of the building and its relative situation with the store-house, that the pottery building alone, composed of the various parts specified in the first of these answers, is referred to in the application, and that the answer limits the application to the personal property contained in it. The testimony of Martin, uncontradicted in this particular, shows that this was his understanding as well as that of Stevens, who acted as agent in making out the application and procuring the policy.  No specific description of the property insured is given in the policy.  It is mentioned as wood, fixtures, clay, kiln, stock in trade, and buildings of the insured, situate as described in the application.  The policy, therefore, covered only the pottery building and the personal property and fixtures therein.  A few days subsequent to the issuing of the defendants' policy, Martin

obtained insurance upon the store and wood-house, and contents, in the Atlantic company.   The only evidence before us as to the property covered by this insurance is the deposition of Martin. From this it is clear that the two insurances were upon different property.

On the 29th of May, 1851, Martin conveyed to the plaintiff the real estate, including all the buildings, and certain personal property.   The plaintiff claims that the personal property then sold was only that in and about the pottery building, including the clay, wood, and ware there stored, and certain other articles — wagons, grain and hay — not covered by either policy ; while the defendants contend that the sale included not only the clay, wood and ware in that building, but also in the store-house and wood-house.   They also contend that this sale was merely colorable, for the purpose of defrauding the creditors of Martin, and that the plaintiff did not in fact become the owner of the property, so as to entitle him to recover upon the policy for a loss.   The evidence upon the question as to what property was included in the sale is conflicting.   Boone and Frederick C. Swain testify that it embraced all in both buildings ; and a bill of sale from Martin to the plaintiff, covering the personal property in both, is sworn to by them as given upon the sale.   The testimony of Martin and of the plaintiff shows another bill of sale as the one then given, covering that in the pottery building alone.   Martin states that he claimed and received from the Atlantic Company about $925 for the loss in the store and wood-house, and its contents, under their policy to him.   This testimony of Boone and Swain, and the evidence showing this claim and the receipt of the money for the loss under that policy, constitute the newly discovered evidence on this point.

It is clear, however, that the evidence would be immaterial in any view, in reference to the question of the ownership of the property ; because, if the sale was merely colorable and fraudulent as to creditors, it can be questioned only by the creditors of Martin.   Being valid as between the parties, it was sufficient to pass the property insured by the defendants' policy, so as to

entitle the plaintiff, as assignee, to claim for the loss; and the evidence of both parties shows that the personal property in the pottery building was included in the sale. Whether it was or not a fraudulent sale as to the creditors of Martin, or whether, if fraudulent, it did not include other property than that insured by the Atlantic Company, are immaterial matters in this suit in reference to the question of the ownership of the property insured by the defendants, and lost; and also in reference to the question of a subsequent insurance. If the whole property in both buildings passed by the sale, it may be a material question for the Atlantic Company to consider, whether their insurance upon the store and wood-house, and its contents, is available to Martin, he having assigned the property insured; but their insurance being upon that property, and the defendants' upon the pottery and its contents, no question can arise in either case in reference to a double insurance. The newly discovered evidence upon this point, then, in no way tends to show that the statement of the loss falsely alleges that the plaintiff was sole owner of the property insured by the defendants at the time of its loss, or that there was no insurance effected upon it subsequent to the defendants'.

Third, in reference to the amount of incumbrance upon the property, the application states that it was incumbered to the amount of $800, without specifying any particular mortgage or other incumbrance. The statement of loss alleges that there was no incumbrance except the mortgage given by Martin to Thomas Crafts, mentioned in the application. An office copy of this mortgage shows it to have been given in 1845, to secure the payment of ten promissory notes, of $180 each, payable yearly. Both Martin and the plaintiff testify that the amount due upon it at the time of the application was but $800, and there is no other direct evidence upon the subject. In a letter from Martin to Swain, dated December, 1852, he states the amount to be $1400. This, however, could be used only for the purpose of impeaching his testimony. In the absence of any proof, the presumption might be that in 1851 the amount had become

reduced to the $800 by the payment of the six notes which had then matured. There is some evidence tending to show that at the time of the application and of the loss, there was another mortgage on the premises, for $100, given by Thomas Crafts, who was the owner of them prior to Martin. An office copy of this mortgage is produced, and Martin and the plaintiff would seem to admit that such a mortgage was upon the premises at the time of the fire.

Assuming that the amount of the incumbrance was falsely stated, both in the application and statement of loss, and that the newly discovered evidence clearly establishes that fact, and that, if established, it would have the effect to avoid the policy, still the defendants have failed to make out a proper case for granting a new trial upon that ground. Both these mortgages were spread upon the public records. Reasonably diligent inquiry on the part of the defendants, directed to the object of ascertaining the incumbrances and their amount, could not have failed to bring them to their notice. No inquiry upon the subject appears to have been made. The affidavits of Judge Fowler and Mr. Foster, who acted as counsel for the defendants at the trial, and in the preparation for it, show that the defence was placed on other grounds, and that the attention of party and counsel was not turned to this point. They forbore inquiry upon the subject, because they were content to risk the defence upon other grounds, although this, if now understood by them to be material to the merits, must have been so understood then. Having elected to place the defence upon other grounds, and therefore to waive inquiry into this, which inquiry, if then made, would without doubt have resulted in the discovery of the evidence, they cannot be considered as having used that reasonable diligence in their inquiries for evidence upon a point directly involved in the suit, which all the authorities agree must be exercised in order to furnish ground for setting aside the verdict.

The same view must be taken of the other point on which new evidence is claimed to have been discovered, viz., the value of the property destroyed. The new evidence on this point comes

from those persons to whom the attention of the defendants would have been turned for information, if they had attempted to investigate the matter, — those employed in the pottery, and most conversant with the kinds and amount of the various articles of stock, and were on hand at the time of the fire. They failed to discover this evidence before the trial, only because they made no inquiry for it ; and they omitted to inquire, because, relying upon other matters of defence, they deemed it unnecessary to make investigation with a view to avail themselves of this. Having waived these grounds of defence, then, they are not in a position to ask that the verdict be set aside for the purpose of giving them an opportunity to try their chances of success upon them in a new trial.

Upon all the grounds of the motion for a new trial, based upon the fact that material evidence has been discovered since the trial, the motion must be denied. But upon the ground of misconduct of the plaintiff or his agent, Martin Crafts, in proceedings connected with the trial, for which he should be held responsible, we think the motion should be granted.

Martin Crafts was a material witness for the plaintiff, especially upon the questions whether an agreement was made between him and the officers of the company, that the additional security for future assessments should be obtained by him for the company, and whether it was forwarded to him, pursuant to that arrangement, before the fire. He testified directly to those facts. The testimony of William A. Pearsons would have contradicted him in the most material part of his evidence on this point. From the affidavits of Swain and Pearsons it appears, that, a short time before the trial, Martin, having learned that inquiry had been made of Pearsons relative to the signing of the note before the loss, by Mr. Lancaster, who it is understood was acting in the matter in behalf of the company, hired Pearsons to absent himself, so that he could not be summoned as a witness. It does not appear that the defendants proposed to summon him ; but it does appear that they were instituting inquiries which, if he had not been kept out of the way, would probably have

resulted in his being summoned. Martin is the brother as well as the principal witness of the plaintiff. He resided in Nashua, where the controversy arose, while the plaintiff resided at a distance. He admits that he collusively transferred a portion of his property to the plaintiff, in fraud of his creditors ; and the circumstances of the transaction tend to raise a strong suspicion that the entire sale from him to the plaintiff was merely colorable. It may well be understood that the plaintiff yielded to him the management and preparation of the cause for trial. It is immaterial whether he did so, because, the sale being merely colorable, Martin remained in fact the party in interest, or because, the sale being *bona fide*, and he therefore the real plaintiff, he intrusted the conduct of the cause to Martin, as his agent. Neither can be permitted to enjoy the fruits of a verdict which the misconduct of Martin, in thus suppressing testimony material to a full and fair investigation of the case, whether acting as principal or as agent of the plaintiff, may have tended to secure.

*Verdict set aside, and new trial granted.*