## JOHN N. FRANCIS *v.* SETH W. BAKER.

A statute of the state provided that "when a cause is at issue in the Supreme Court or Court of Common Pleas, if the form of action be assumpsit, debt, covenant, or other form of action in any way involving accounts, the court may in its discretion appoint one or more auditors," &c. The statute further provided for a trial by jury after confirmation of the auditor's report and judgment thereon, "in which trial the report shall be *prima facie* evidence of all matters expressly embraced in the order."

*Held,* that this statute was void so far as it made the auditor's report *prima facie* evidence for the jury, being in conflict with art. 1, § 15, of the Constitution of the state, which provides that "the right of trial by jury shall remain inviolate."

An agreement to refer a case to an auditor is not an agreement that his report may be used as evidence in the trial of the case to the jury, if the provision of the statute making it evidence is void.

After two concurring verdicts a new trial will not be granted on account of newly discovered testimony which refers to a collateral issue or to the credibility of witnesses.

A verdict in favor of the plaintiff being given for nearly $6,000 more than the "*ad damnum*" of the writ, and it appearing that the jury allowed the plaintiff the full amount of $2,800 of notes which had been compromised for about fifty per cent. of their face value : —

*Held,* that both errors would be corrected without a new trial by remitting the excess of the verdict over the damages laid in the writ.

DEFENDANT'S petitions for new trials. The facts are stated in the opinions of the court.

The case was heard October 10, 1874, on the constitutionality

of the auditor's act, so called, of Rhode Island, Gen. Stat. R. I. cap. 204, § 10 *et seq.* by the full court, consisting at that time of Durfee, Burges, and Potter, JJ.

*Abraham Payne & George M. Carpenter,* Jr., for the defendant and in support of the petition.

The act under which this case was referred to an auditor, so far as it makes the report of the auditor *primâ facie* evidence on the trial of the case before a jury, is an abridgment and " violation " of the right of trial by jury, as it existed prior to the adoption of the Constitution of the State, and is therefore unconstitutional and void. Public Laws, cap. 660, March 8, 1867, and cap. 896, January 19, 1871 ; Constitution of R. I. art. 1, sec. 15.

The right which is intended to be preserved by the Constitution is the right to have every action tried in substantially the same manner as was used before the adoption of the Constitution. Any material alteration of this manner of trial is unconstitutional, though it may not be manifest that the modified practice is less useful than the old. The number of the jurors may not be changed. *Work* v. *The State,* 2 Ohio, N. S. 296 ; *Lamb* v. *Lane,* 4 Ohio N. S. 167 ; *May* v. *Milwaukee & Mississippi R. R. Co.* 3 Wis. (Smith) 219 ; *Norval* v. *Rice,* 2 Wis. (Smith) 22.

Nor may authority be given to enter a verdict, except on a unanimous agreement of the jury. *Work* v. *The State,* as above.

In actions of assumpsit, no practice like that established in chapter 660 prevailed before the adoption of the Constitution ; and the new practice impairs the right of trial by jury in the following essential particulars : —

1. A trial by jury is a trial in which the jury decides the issues of fact. It is equally important that no person outside the jury shall take part in the decision, and that no fact outside the issues and not bearing on them, shall be presented to the tribunal. The rules of evidence may be changed : that is, facts in the case may be required to be proved in a different way ; facts in the case not before provable may be made provable ; and facts in the case before provable may be withdrawn by law from the consideration of the jury. But it essentially impairs the right to introduce before the jury, as a fact in the case, and to be

weighed as such, a fact having no bearing on the issue, — as for instance the opinion of an officer of the court as to the evidence and the right of the case.

2. An essential rule in trials by jury as heretofore practised is, that the person maintaining the affirmative shall take the burden of proof. The right of the party in the negative is impaired by a law which throws that burden on him. *Plimpton* v. *Somerset*, 33 Vermont, 283.

The fact that in this case the plaintiff was able, by the production of certain promissory notes, to make a *primâ facie* case, without the aid of the report, does not compensate for the material damage done to the defendant, by admitting as a fact in the case a carefully drawn opinion of the auditor on the evidence. Such an opinion could not fail to have great weight, and was, as the figures show, made the basis of the verdict. In truth as well as in theory, this verdict was founded on a fact which, in the very nature of things, has no connection with the issue.

*Edwin Metcalf*, for the plaintiff, *contra*.

I. The petition should be dismissed, because the fact of a jury trial having taken place is conclusive evidence that the defendant has not been deprived of his constitutional right to such trial. The statute does not, in intention or in practice, deny or abridge the right. Unless, indeed, the defendant maintains his constitutional right to two jury trials, — which does not seem to be claimed. See Cooley's Constitutional Limitations, 356, 410, n., and *Crandall* v. *James*, 6 R. I. 144 ; *Jones* v. *Robbins*, 8 Gray, 329, for discussion and statement of general doctrines on this point.

II. The sole purpose and effect of the statute in question is to alter rules of evidence. This the General Assembly may do without violating the letter or the spirit of the Constitution, so long as the right to trial by jury is kept inviolate. See cases cited in Cooley's Constitutional Limitations, 367.

III. The defendant not only had his jury trial, but he admitted to the jury that the plaintiff's entire claim was correct, showing conclusively that the auditor's report, though read at the trial, could have no possible influence in the determination of the case. It may be added, that practically the defendant has had

two jury trials, the record showing that the case was fully heard by a jury in the Court of Common Pleas (except the closing arguments), when the defendant submitted and appealed. A new trial in such circumstances would be a singular vindication of a Constitution which guarantees "right and justice promptly and without delay."

*February* 24, 1875. DURFEE, C. J. This is an action of assumpsit upon book account and upon divers notes and checks. The action was commenced in the Court of Common Pleas, and was there referred to an auditor, whose report in favor of the plaintiff was confirmed at the June Term, 1870, and judgment thereon was entered for the plaintiff for $13,512.46. Thereupon a jury trial was had, which resulted in favor of the plaintiff; and the case was appealed.

At the trial in this court the plaintiff offered to read the report of the auditor as evidence; and the defendant objected to its admission on the ground that the statute under which the case was referred to the auditor was contrary to the Constitution of this state, and of the United States, inasmuch as it impaired the right of trial by jury as secured by the Constitution of this state and the Constitution of the United States. But the court ruled that the auditor's report was admissible, and permitted it to be read as evidence. To this ruling the defendant reserved an exception. The court also, in its charge to the jury, instructed them that the report was *primâ facie* evidence of the plaintiff's claim, and entitled him to a verdict in the absence of evidence to the contrary of it. And the defendant excepted to this instruction.

The act under which the case was referred was passed in 1867. The act provides that "when a cause is at issue in the Supreme Court or Court of Common Pleas, if the form of action be assumpsit, debt, covenant, or other form of action in any way involving accounts, the court may in its discretion appoint one or more auditors," &c. The act further provides for a trial by jury on demand, after confirmation of the auditor's report and judgment thereon, "in which trial," the act proceeds to provide, "the report shall be *primâ facie* evidence of all matters expressly embraced in the order." The statute now in force is substantially the same. Gen. Stat. R. I. cap. 204, § 10 *et seq.* The clause in

the Constitution of the state with which the act is supposed to be in conflict is art. 1, § 15. It reads as follows, viz.: "The right of trial by jury shall remain inviolate."

The statute in force previous to 1867 contained no provision for a jury trial, being, in that respect, more obnoxious than the statute under consideration. It was, however, somewhat less comprehensive than the act of 1867, being confined to actions relative to partnerships and joint accounts, and to actions involving matters of book account. This statute first appears in the Digest of 1844. Previous to that time, and previous to the adoption of the Constitution, the courts had power to appoint auditors only in actions of account, and in actions on the case between partners.

The act of 1867 and the statute now in force are very similar to statutes which have long been in force in Massachusetts and New Hampshire, — the statute in Massachusetts having existed since 1817, and the statute in New Hampshire since 1822. The reports of these states contain many cases involving the construction of those statutes, but none that we are aware of in regard to their constitutionality. The Constitution of Massachusetts, adopted in 1780, and that of New Hampshire, adopted in 1792, both expressly declare the sacredness of the right of trial by jury. The fact that the statutes referred to have so long existed without any impeachment of their constitutionality is strong evidence of the prevalence of a belief in those states that they could not be successfully impeached. It is a fact which admonishes us not to pronounce our own statute unconstitutional without the most careful deliberation.

In Vermont an act was passed in 1856 authorizing any county court to refer any civil action pending therein to a commissioner or commissioners, and providing that the commissioner's report should be *primâ facie* evidence upon a trial of the action before a jury. In *Plimpton* v. *Somerset*, 33 Vt. 283, an action to recover damages resulting from the insufficiency of a highway was referred under this act. The commissioner reported in favor of the plaintiff, and his report was allowed to go to the jury as *primâ facie* evidence, an exception to the ruling being reserved by the defendant. The defendant contended in support of his exception that the act of 1856 was unconstitutional, being in violation of

the declaration in the Bill of Rights, which reads as follows: " Where any issue in fact proper for the cognizance of a jury is joined in a court, the parties have a right of trial by jury, which ought to be held sacred." The Supreme Court of Vermont, in a carefully considered opinion, the case having been twice argued, declared the act to be unconstitutional. The ground of the decision was, that under the act a case would go to the jury prejudged in favor of the party for whom the report was rendered, the jury being bound by the report in the absence of testimony to impeach its correctness. There is no *trial* by jury, the court argues, if the decision of the jury is to be controlled by the judgment of some other body ; and if it be only partially so controlled, yet, so far as it is controlled, the right is impaired. We refer to the opinion as a forcible presentation of the argument against the constitutionality of that and other similar acts.

The counsel for the plaintiff contends that the act does not affect the right of trial by jury, but simply prescribes a new rule of evidence which the legislature has the power to do. The legislature has such a power without doubt. Acts by which a tax deed is made *primâ facie* evidence of the regularity of all proceedings antecedent to the deed, have been declared to be constitutional. *Hand* v. *Ballou*, 12 N. Y. 541 ; *Delaplaine* v. *Cook*, 7 Wis. 44 ; *Allen* v. *Armstrong*, 16 Iowa, 508 ; *Wright* v. *Dunham*, 13 Mich. 414. These acts bear some analogy to the act under which this case was referred. But there is a difference. A tax deed is the last of a series of official acts constituting a tax title. The legislature says, this last act being proved, the others may be presumed. This, inasmuch as the last act without the prior acts is a nullity, is merely requiring the jury to infer, in the absence of testimony to the contrary, that an officer in assuming to perform an official act is acting in the line of his duty. The act required to be taken as *primâ facie* evidence is in the nature of evidence. The report of an auditor is, properly speaking, not evidence, but a decision. The act declaring it *primâ facie* evidence declares its effect as a decision, and, in so far as it gives it effect, substitutes the judgment of the auditor for that of the jury. If the report were made conclusive evidence the substitution would be complete, and would without doubt be unconstitutional. See *Rhines* v. *Clark*, 51 Pa. St. 96.

Is the substitution, because incomplete, constitutional? Is it not still an encroachment upon the province of the jury? Cases may easily be supposed in which the report might almost or quite as well be conclusive as *primâ facie* evidence. Suppose the testimony all came from the plaintiff's witnesses, and the defendant relied on his cross-examination to discredit them. If the report were in favor of the plaintiff how could the defendant disprove it? He would certainly be at great if not fatal disadvantage.

But again, if the legislature can make the report of an auditor *primâ facie* evidence, why not the judgment of any other tribunal? Why, for instance, can it not make the decision of a trial justice *primâ facie* evidence in the trial, on appeal, before a jury, and at the same time extend the justice's jurisdiction to cases involving large amounts? It will hardly be contended that the legislature has the power to do this. But if not, how has it the power to pass the act under consideration? The exercise of the power may be unwise in the one case and wise in the other. But the question is not a question of wisdom but of constitutionality. The question is, whether the right of trial by jury under the act is the same as it was prior to the act, — whether it remains inviolate. The right of trial by jury is the right to have a jury hear and decide upon evidence the issues of fact which they are empanelled to try. Is not this right impaired if the jury is required to decide, without hearing the evidence, it may be, according to the report of an auditor; or, in case the evidence is submitted, is still required to decide according to such report, unless the evidence against it is clear enough to convince them that it is probably erroneous, and even though, independently of such report, it might decide the case another way? We are constrained to the conclusion that the right is impaired or violated when the minds of the jury are or may be so trammelled and controlled. If such legislation were new to American jurisprudence, we should have little hesitation in coming to this conclusion. The fact that the constitutionality of similar acts long existing in other states has not been questioned is a fact which cannot be disregarded. The fact however is not decisive. An unconstitutional act which is not too often used, and which when used works well, may be long tolerated without question. In our own state the act contained in the Digest of 1844, which was in force

many years, created little or no dissatisfaction, for the reason probably that it was very seldom applied in any case where either party strongly objected. We think the decision in Vermont, which coincides with our own opinion, is to be followed, rather than the practice under the several acts referred to which is against it.

The plaintiff calls our attention to the fact that the case was referred to an auditor by agreement. We do not see how that makes any difference. An agreement to refer a case to an auditor is not an agreement that his report may be used as evidence in the trial of the case to the jury, if the provision of the statute making it evidence is void. *We grant a new trial.*

The new trial thus granted took place at the October Term, 1875, for the County of Providence, and resulted in a verdict for the plaintiff, his damages being assessed by the jury at $15,904.61.

The defendant then filed another petition for a new trial. The reasons alleged for this petition are stated in the opinion of the court.

*A. & A. D. Payne* and *George M. Carpenter, Jr.*, for the petitioning defendant.

*Edwin Metcalf*, for the plaintiff, *contra*.

*January* 10, 1877. DURFEE, C. J. This was an action upon certain obligations held by the plaintiff against the defendant to recover the amount due upon them. The defence was that there had been a mutual borrowing and lending, and that the plaintiff, if entitled to recover at all, was only entitled to recover a balance of account. In support of this claim the defendant produced certain vouchers which were allowed to go to the jury as evidence to reduce the plaintiff's claim, if upon the testimony the jury thought they should be so applied. The jury returned a verdict for the plaintiff for the full amount of his claim. The defendant petitions for a new trial upon three grounds.

1. One ground is newly discovered testimony. The defendant produced the plaintiff's receipt, dated December 27, 1859, for five promissory notes, which were stated in the receipt to be to the defendant's credit in account. The notes were made by Jeremiah Knight, payable to the order of the defendant in sixty and

ninety days, and in four, five, and six months. They amounted
in all to $5,343.47. One of them, namely, the note payable in
four months, being for $1,100.00, was embraced in this suit.
Aside from that, the earliest obligation sued is dated February
28, 1860. The plaintiff testified that the defendant was owing
him six or seven thousand dollars when he received the notes.
If this be true, the notes having been received on account, would
not be applicable to reduce the account in suit, for every item of
the account in suit, except the note at four months then received,
was of subsequent origin. The plaintiff further testified that he
surrendered, in exchange for the notes, obligations which he held
against the defendant to an equal amount, so that on his part the
transaction was completely adjusted and closed. The jury evi-
dently believed this, to the extent at least that the notes were
received on an account then existing against the defendant to an
equal or greater amount ; for they show that they so far believed
it by giving the plaintiff a verdict for the full amount of his
claim without deduction or abatement. The plaintiff made still
another statement, namely, that none, or at most only one, of the
notes was paid to him, and that, becoming disgusted with the
notes on this account, he returned them to the defendant, who
gave him other paper for them. It will be seen that this state-
ment is in itself immaterial, for if the defendant was entitled to
a deduction on account of the notes, the notes having been given
up, in exchange for other paper, he was equally entitled to a de-
duction on account of the paper received in lieu of them. The
defendant professes to have been surprised by this statement,
which he says was never before made, though there had pre-
viously been two jury trials at which the plaintiff had testified.
He makes affidavit that since the trial he has discovered testi-
mony to contradict it, which in the course of the trial he had no
opportunity to discover or produce. It is to introduce this testi-
mony that he asks for a new trial. The newly discovered testi-
mony, even if the defendant had had it at the trial, would have
shed no direct light upon the material question, whether the
notes were received on an account against the defendant to an
equal or greater amount, or upon the question whether the plain-
tiff gave up in exchange for the notes obligations which he held
against the defendant to an equal amount; but would have been

valuable only as it affected the plaintiff's credit as a witness, by showing that upon a collateral point his testimony was incorrect. The new testimony, however, as exhibited in the affidavits, is not even upon this point a complete contradiction; for though it clearly shows that two of the notes were paid directly to the plaintiff, it only creates a presumption or probability that the other two were paid to him or for his account; and, as to the two notes paid to him, it shows that they were so paid that he might well be dissatisfied or disgusted with the manner of the payment.

Such being the case, ought we to grant a new trial to enable the defendant to use the new testimony? We think not. The case has already been twice fully tried with the same result, and a new trial is seldom granted because of newly discovered testimony which goes merely to a collateral issue, or to the credibility of a witness. Hilliard on New Trials, 375, 385; *Warner* v. *West. Trans. Co.* 5 Rob. N. Y. 490, 498; *Campbell* v. *Hyde*, 1 D. Chip. 65, 70; *Crafts* v. *Union Mutual Fire Ins. Co.* 36 N. H. 44; *Sproul* v. *Fire Ins. Co.* 1 Lans. 71.

2. Another ground assigned in the petition is that the verdict was rendered for an amount in excess of the *ad damnum* in the writ, — the *ad damnum* being only $10,000, and the verdict being rendered for $15,904.61. No new trial is necessary to remedy this error. It can be remedied by a remission of the excess. To this the plaintiff consents.

3. A third ground for a new trial is that the jury allowed the plaintiff the full amount of certain notes which the plaintiff had compromised and taken up for about fifty per cent. The amount of these notes is $2,800. The excess of the verdict over the *ad damnum* is much greater than half of this with interest. The error will therefore be corrected by the remission of that excess.

We deny the new trial, the plaintiff, however, being required to remit the excess of the verdict over the *ad damnum* of the writ.                            *New trial refused.*

Subsequently the defendant asked for permission to reargue this last petition for a new trial. The request was refused and execution issued.